■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v GORDON M. PUGH, Appellant.—Appeal by defendant from a judgment of the County Court, Nassau County, rendered July 9, 1976, convicting him of sexual abuse in the second degree and endangering the welfare of a child, upon his plea of guilty, and imposing sentence. The appeal brings up for review the denial, after a hearing, of defendant's motion to suppress statements. Judgment reversed, on the law and the facts, motion granted, plea vacated and case remitted to the County Court, Nassau County, for further proceedings consistent herewith. The defendant was convicted of sexual abuse in the second degree and endangering the welfare of a child, upon a plea of guilty entered in the face of evidence consisting primarily of statements which he had made to the police. Prior to these statements, the police had no knowledge of any criminal activity by the defendant in Nassau County. What they did have was a complaint from a child that defendant had engaged in certain illegal sexual conduct in Vermont on a recent boy scout trip to that State. Thus, all of the knowledge the police gained about defendant's illegal sexual activities in Nassau County stemmed from his own admissions. The question presented on this appeal is whether the People have proven beyond a reasonable doubt that those admissions occurred only after defendant had knowingly and voluntarily waived his *Miranda* rights. Testimony adduced at the *Huntley* hearing indicates that on the evening of March 13, 1975, three detectives were sent to locate defendant and to interrogate him. They proceeded to defendant's home where his wife informed them that he would be arriving on the 7:00 P.M. bus in Manhasset. The detectives met defendant and asked him to accompany them to the police precinct to discuss matters under investigation. Initially, defendant indicated that he would prefer to speak to the detectives at his home, but when they stated that they would rather speak to him privately at the precinct, he agreed to accompany them. According to defendant's testimony, when he got to the precinct he was asked whether he knew the complainant, whether he thought the complainant was honest and whether he had ever had sexual contact with the complainant. After defendant gave negative answers, the police officers gave him the *Miranda* warnings, and then informed him that the complainant had accused him of

having engaged in illegal sexual acts while on a trip to Vermont. Defendant asserted that while he was being interrogated a police officer entered the room and informed the detectives that the complainant's parents were on their way to the precinct. In any event, defendant contends that after hearing the complainant's allegations he refused to make a confession and asked to speak to his lawyer, Malcolm Dowsey. The police called Dowsey, who arrived about 20 minutes later. Thus, defendant denies that he ever confessed to the police. Dowsey testified that he first heard of the case from Detective Allen, who called him on behalf of defendant. Dowsey asked Allen if defendant had made any inculpatory admissions and the detective answered that he had not. Dowsey further stated that when he arrived at the precinct he was informed again by Allen that defendant had made no confession. Against this testimony, the People offered the testimony of Detectives Pagnotta, Allen and McGoff, who conducted the interrogation. All of them testified that defendant was given his *Miranda* warnings before he was questioned. According to the detectives, when defendant was asked if he understood his rights he asked certain clarifying questions. He asked whether he would be arrested if he admitted anything and was told that he would be arrested if he admitted a crime. He then asked whether he would be arrested if he remained silent. The detectives told him that he would not be arrested, but their investigation would continue. The detectives are not in complete agreement as to what followed. Pagnotta testified that defendant never evidenced any qualms about being interrogated and voluntarily confessed to illicit sexual conduct within Nassau County. McGoff said that when defendant heard that he would be arrested only if he made an admission, defendant replied, "well maybe I shouldn't say anything then." The other detectives did not remember this statement, but Allen testified that after hearing that he could be arrested only if he admitted a crime, defendant asked what the complaint was about. Allen claims that when defendant was apprised of the substance of the complainant's statement, defendant responded, "Well, I don't want to discuss it. But everything in that statement is the truth." All three detectives testified that ultimately defendant did admit to having sexual contact with the complainant in Nassau County and that when defendant was asked to give a written statement he refused and asked to speak to an attorney. Upon this evidence, Criminal Term held that the station house questioning was a custodial interrogation and that the People proved beyond a reasonable doubt that defendant had knowingly and voluntarily waived his *Miranda* rights. We now reverse and vacate the defendant's guilty plea. We agree with Criminal Term's initial finding that the questioning of defendant at the precinct constituted a custodial interrogation. Having received the familiar *Miranda* warnings, the question is whether the defendant knowingly and intelligently waived the rights of which he was apprised. The prosecution has the burden of proving such a waiver and it has been said that this burden of proof is a heavy one *(Miranda v Arizona,* 384 US 436, 475; Richardson, Evidence [Prince 10th ed], § 543). We believe that although each of the detectives testified honestly and to the best of his recollection, the divergence in their testimony gives rise to a reasonable doubt as to whether defendant indicated at some point that he would prefer to remain silent. Two of the detectives indicated that defendant had qualms about discussing his relationship with the complainant. One detective admitted that defendant stated "well maybe I shouldn't say anything then", while another testified that defendant admitted the sexual contact in Vermont, but stated that he "[did not] want to discuss it." In light of this testimony, it is probable that before any

confession could be had, defendant invoked his privilege against self-incrimination. However, the fact that a suspect once invokes his right to remain silent does not completely foreclose the possibility of further questioning by the police, under appropriate circumstances *(Michigan v Mosley,* 423 US 96; *People v Grant,* 45 NY2d 366; *People v Buxton,* 44 NY2d 33). Questioning may resume at a later time, if the police have followed a specified procedure in the interim. In *Michigan v Mosley (supra),* the Supreme Court of the United States held that when a suspect, during interrogation, exercises his right to remain silent, the police must scrupulously honor his right and must terminate the interrogation immediately. The court reasoned that by respecting the suspect's decision to remain silent, the police afford him the opportunity to control the time and duration of the interrogation and this serves to dissipate the coercive pressures of a custodial interrogation *(supra,* pp 103-104). After a respite, the questioning may be resumed, but the police must administer a new set of *Miranda* warnings and the subsequent statement cannot be the product of " 'continued importunity or coercive interrogation in the guise of a request for reconsideration' " *(People v Buxton, supra,* p 37). It is apparent from the record that these procedures were not followed in the instant case. Unlike *Mosley (supra),* here there is no evidence that the detectives suspended questioning for any length of time or that they readvised defendant of the *Miranda* warnings. In fact, it was at this stage of the interrogation that the police informed defendant of the complaint against him. This was hardly calculated to put the defendant at ease and, if anything, it heightened "the coercive pressures of the custodial setting" *(Mosley, supra,* p 104). In this respect the case is similar to *People v Grant* (45 NY2d 366, *supra),* where the defendant initially agreed to speak to the District Attorney about the crime for which he had been arrested. However, upon hearing the *Miranda* warnings, the defendant asked to have counsel present during the interrogation.* Questioning ceased and the defendant was removed from the interrogation room. At this point, the arresting officer explained to Grant that the evidence against him was substantial and the defendant then agreed to confess to the crime. He returned to the interrogation room, received the *Miranda* warnings, orally waived the rights recited, and then confessed to the crime. In suppressing the confession, the Court of Appeals emphasized the fact that it had been prompted by the detective's recitation of the strong evidence against the defendant. Any such recitation of the charges or the evidence against a suspect is bound to aggravate the coercive pressures of a custodial interrogation. While this may be a legitimate method of interrogation in the first instance, it may not be used to psychologically overcome a suspect's constitutionally protected and asserted decision to remain silent. Once a suspect declares that he prefers to remain silent, an obligation devolves upon the interrogating police officers to follow closely the procedures mandated by

---

* This is a distinguishing factor between *Grant* and the case at bar for at the prearraignment, preindictment stage of a criminal proceeding, the right to counsel receives greater judicial solicitude than the right to remain silent. A defendant may subsequently waive his right to remain silent whereas, "Once a lawyer has entered a criminal proceeding representing a defendant in connection with criminal charges under investigation, the defendant in custody may not waive his right to counsel in the absence of the lawyer" *(People v Hobson,* 39 NY2d 479, 481). However, the Court of Appeals in *Grant* expressly stated that its decision was not based upon this distinction and therefore the *ratio decidendi* applies with equal force to a request to remain silent.

the Supreme Court in *Michigan v Mosley* (423 US 96, *supra),* so as to insure that any subsequent confession is solely the product of the suspect's free will. Since this was not done, the judgment must be reversed and the confession must be suppressed. Damiani, J. P., O'Connor, Lazer and Gulotta, JJ., concur.

