■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v WAYNE DUNCAN, Appellant.—Appeal by defendant from a judgment of the Supreme Court, Queens County, rendered May 15, 1979, convicting him of attempted criminal possession of a controlled substance in the fifth degree, upon a plea

of guilty, and imposing sentence. Judgment affirmed. Defendant stands convicted, upon his plea of guilty, of attempted criminal possession of a controlled substance in the fifth degree. The central issue on appeal is whether the conduct of the police officers when they initially asked the defendant for identification was supported by reasonable suspicion. If not, then all physical evidence subsequently seized should have been suppressed as tainted fruit, and the indictment would necessarily have to be dismissed. However, in this case, the police conduct was entirely appropriate and the motion to suppress properly denied. The findings of fact made by Criminal Term after conducting a hearing are fully supported by the record and may not properly be disturbed (cf. *People v Wright*, 71 AD2d 585; *People v Newson*, 68 AD2d 377, 387). The relevant findings are as follows: On July 2, 1978, at approximately 3:00 A.M., Police Officers Race and Manzi observed the defendant, a black male, slouching behind the steering wheel of a white vehicle which was double parked, with the motor running, in front of a bar. The officers drove around the block and then kept the white vehicle under observation for a few minutes. The officers then pulled their patrol car behind the white vehicle and Officer Race asked defendant why he was double parked. Defendant responded that he was waiting for his friend who was in the bar buying cigarettes. Upon further inquiry he described his friend as a male Hispanic. The officers had prior knowledge of two robberies of local liquor stores by a black male and a Hispanic male, who used a white automobile. Race then looked through the window of the bar and verified that there was a male Hispanic at the cigarette machine. When the male Hispanic failed to return to the car after a few more minutes, Race entered the bar and was told by the bartender that the Hispanic man started to leave, but when he saw the patrol car, he instead fled through the back door. Race returned to the vehicle and asked defendant for his license, registration and insurance card. While defendant was searching for the requested documents, Race directed the beam of his flashlight into the vehicle. At this point, Race observed the pearl handled butt of a gun. The defendant was removed from the car, the gun was retrieved, and a subsequent search disclosed defendant's possession of various narcotic substances. It is self-evident that the initial approach to the defendant, for the purpose of asking why he was double parked, was entirely proper. Under the facts and circumstances as they developed, the use by Officer Race of his flashlight to illuminate the contents of the car, which but for the dark, would have been in plain view was fully justified (see *People v Miller*, 52 AD2d 425, affd 43 NY2d 789). The crucial event in the above scenario is the limited constitutional seizure which occurred when the defendant was asked for identification. We find that the officers had a basis for reasonable suspicion sufficient to warrant the intrusion which occurred here. (Cf. *Brown v Texas*, 443 US 47.) Reasonable suspicion is sometimes defined as that "quantum of knowledge sufficient to induce an ordinarily prudent and cautious man under the circumstances to believe criminal activity is at hand" *(People v Cantor*, 36 NY2d 106, 112-113). Rather than a subjective feeling, reasonable suspicion must be founded upon articulable facts. Necessarily, each case must turn upon its own facts *(People v Prochilo*, 41 NY2d 759; *People v Green*, 35 NY2d 193). But more important than any imprecise definition is the underlying constitutional right which is sought to be protected, the right to be free from unreasonable searches and seizures. The key term is "unreasonable" and consequently the ultimate determination involves striking a balance between the public interest, coupled with the reasonableness and appropriateness of the official action, and the individu-

al's right to personal security free from the arbitrary interference of police officers *(Brown v Texas,* 443 US 47, 50-51, *supra; People v Prochilo,* 41 NY2d 759, 761, *supra).* In striking such a balance, courts should be careful that the properly zealous protection of individual liberties does not unduly eclipse the reality of the particular circumstances at bar. In the instant case, the police conduct was not unreasonable. The fact that the defendant was seated behind the steering wheel of a double parked car was itself a sufficient predicate to justify the relatively minimal intrusion of asking him for his driver's license and registration. The ensuing events only provided greater cause for such request. The officers were confronted by two men, one black and one Hispanic, and a white car which was double parked with its motor running for several minutes at 3:00 A.M. The officers had prior information that a black male and a Hispanic male, using a white car, were suspected of having committed several liquor store robberies. The public interest requires that its police officers take notice of such coincidences. Added to this were the officers' observations that the defendant seemed to slouch as they first drove by in their marked vehicle. The police officers' suspicions were further aroused by the flight of the male Hispanic for whom the defendant was waiting. If only purchasing cigarettes, why should he have fled? Certainly there may have been an innocent explanation, but absent an arrest, the police need not have speculated. Rather, the officers had an objective and articulable basis to justify their inquiry of the defendant. Having committed a traffic violation the defendant necessarily subjected himself to the possibility of being asked for his driver's license and registration. Such an inquiry is, of course, appropriate and constitutes no significant intrusion of a driver's rights of personal security. Does the defendant become insulated from such an inquiry merely because the officers are concerned about additional aspects of defendant's presence? Absent a more significant intrusion, such a result is untenable. Here, the police action was reasonable rather than arbitrary and there was no abuse of defendant's reasonable expectation of personal security. Therefore, defendant's motion to suppress was properly denied. Rabin, J. P., Margett and Weinstein, JJ., concur.

Martuscello, J., dissents and votes to reverse the judgment, grant the motion to suppress, and dismiss the indictment, with the following memorandum: On July 2, 1978, at approximately 3:00 A.M., Police Officers Michael Race and Louis Manzi were riding in a marked patrol car when they observed a white Oldsmobile, double parked in front of a bar at 136-11 41st Avenue in Queens County. As the officers drove alongside the car, they observed defendant, a black male, slouched down behind the steering wheel. The officers drove around the block and parked at the corner to make further observations, their suspicions aroused by the fact that there had been two previous robberies of liquor stores in the area by two males, one black and one Hispanic, using a white automobile. After a few minutes, the officers pulled the car directly behind defendant's vehicle and Officer Race got out of the patrol car to ask defendant what he was doing. Defendant responded that he was waiting for a friend, whom he described as a male Hispanic, who had gone into the bar to buy cigarettes. Officer Race walked up to the front window of the bar and saw a male Hispanic inside by the cigarette machine. Officer Race returned to defendant's car and waited there with Officer Manzi for defendant's friend to return. When the person whom the officer had observed failed to come out, Officer Race entered the bar and observed that the male Hispanic was no longer inside. Upon questioning the bartender, the officer learned that defendant's friend had begun to walk out

the front of the bar, but apparently when he observed the patrol car, turned around and exited through the back door. Officer Race thereupon returned to defendant's car. According to the testimony of Officer Manzi at the suppression hearing, Officer Race asked defendant for his license and registration when the officer first returned from the bar, but defendant took a long time finding the papers and did not produce them until after Officer Race had returned from the bar the second time. According to the testimony of Officer Race, he did not ask defendant for his license and registration until his second return from the bar. In any event, both officers testified that it was at this later point that defendant produced his identification. As defendant looked for his identification, Officer Race shined a flashlight into the vehicle from outside the driver's window of the car. While so doing, the officer observed the butt of a pearl handled gun protruding from under the front seat of the car, between defendant's legs. Defendant was arrested upon discovery of the weapon. A search of defendant's person incident to the arrest revealed a quantity of cocaine. A subsequent inventory search of the car revealed a quantity of marihuana on the floor of the back seat. After defendant's motion to suppress the seized contraband was denied, he entered a plea of guilty to attempted criminal possession of a controlled substance in the fifth degree. Defendant's motion to suppress should have been granted. The officers' initial approach of defendant's car was justified under the common-law right of inquiry (see People v De Bour, 40 NY2d 210), since the circumstances of the case were sufficient to generate a founded suspicion that criminal activity was afoot. However, defendant's response to the officers' inquiries together with the officers' own observations, were not sufficient to give rise to a reasonable suspicion that defendant was engaged in criminal activity. There was thus no basis upon which to require him to produce his license and registration, regardless of at what point he was actually asked for identification (see Brown v Texas, 443 US 47; People v Engle, 74 AD2d 583). It follows that the gun was not properly seized under the plain view doctrine because there was no justification for the intrusion with the flashlight into the car (cf. People v Smith, 42 NY2d 961). Since there was therefore no predicate for defendant's arrest, the subsequent search of his person and inventory search of his car were also improper.