■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v STEPHEN GAGNE, Appellant.—Appeal by the defendant from a judgment of the Supreme Court, Queens County (Posner, J.), rendered June 15, 1984, convicting him of murder in the second degree (two counts), and burglary in the first degree, upon a jury verdict and imposing sentence. The appeal brings up for review the denial, after a hearing, of that branch of the defendant's omnibus motion which was to suppress certain statements made by him to the police.

Ordered that the judgment is affirmed.

Under Queens County indictment number 1333/83, the defendant, Stephen Gagne, his brother Louis, and his girl-friend, Donna Bell, were all charged with acting in concert in committing two counts of murder in the second degree, and burglary in the first degree. The charges arose from the death of Palmina Bell, mother of the codefendant Donna Bell, by means of strangulation during the commission of a burglary. The indictment designated the date of the crimes as being "on or about April 5, 1983".

In order to expedite the defendant's case, and upon counsels' consent, the defendant was provided with voluntary disclosure material to aid in the preparation of his defense. The court deemed the People's voluntary disclosure material to be an answer and response to the defendant's demand for a bill of particulars and discovery. The court also ordered, *inter alia,* a hearing to determine whether probable cause existed to

arrest the defendant and as to the voluntariness of the defendant's statement to the police.

At a joint suppression hearing, the prosecution presented the testimony of several police officers involved in the investigation of the homicide, who essentially maintained that the defendant telephoned the police on April 7, 1983, and voluntarily agreed to go to a station house located in Queens along with Donna Bell to assist in their investigation of the homicide. A police escort was sent out to Bayshore, Long Island, and Donna Bell and and the defendant arrived at the Queens precinct at about 7:00 P.M. on April 7, 1983. According to the witnesses for the prosecution, neither Bell nor the defendant were placed under arrest at that time, nor were they restrained at the station house in any way. Donna Bell was separately interviewed by the police while the defendant voluntarily remained at the precinct. After waiving her *Miranda* rights, she gave the police a statement incriminating the defendant in the perpetration of the crimes. Bell's interview concluded at about 11:00 P.M. and according to the testimony of the police, based upon Bell's incriminating statement, the defendant at this point was not free to leave the precinct.

According to the testimony of Detective Carmine Bottari, he began questioning the defendant at about 3:30 A.M. on April 8, 1983. He initially read the defendant his *Miranda* warnings which the defendant acknowledged that he understood, and then waived. Bottari then informed the defendant that Bell had made a statement implicating him in the homicide, and when he cried and expressed disbelief, Bottari brought the defendant over to a room where an Assistant District Attorney was videotaping Bell's statement. Thereafter, the defendant made an inculpatory statement which he refused to repeat to the Assistant District Attorney.

The defendant's testimony completely contradicted that of the prosecution's witnesses. He claimed that he was placed under arrest when the police escort arrived in Bayshore, that he repeatedly and unsuccessfully tried to contact his attorney, that he was improperly questioned, and that he was psychologically coerced into making a statement to the police.

The hearing court denied that branch of the defendant's omnibus motion which was to suppress his statements. The court stated that it did not credit the defendant's testimony, and found that the People sustained their burden of proving that the defendant's statements were voluntarily made, and

were obtained by the police without any violation of his constitutional rights.

On this appeal, the defendant, in his *pro se* supplemental brief and through his appellate attorney, challenges every phase of the police procedure from their initial contact with him in Bayshore to the time they obtained his incriminating statement. However, we find that the record supports the hearing court's findings of fact and conclusions of law that the defendant voluntarily made the incriminating statement to the police. Accordingly, no basis exists to disturb the hearing court's determination *(see, People v Duncan,* 75 AD2d 823, 824).

We also find that the trial court properly adhered to the suppression order although the defense attorney elicited testimony indicating that prior to the defendant's 3:30 A.M. interview by Detective Bottari, at about 11:00 P.M. Detective Carpenter, without giving the defendant *Miranda* warnings, attempted to question him. Carpenter testified at trial that he did not pursue the matter after the defendant refused to speak to him, thereby invoking his right to remain silent. The defendant argues that when this additional information came to light, the trial court should have reopened the *Huntley* hearing as it indicated that his right to remain silent was violated. However, the People properly point out that as Detective Carpenter testified at the hearing, the defense attorney could have explored this matter during its cross-examination of Carpenter at that time. Accordingly, there was no basis for the trial court to grant the renewed motion to suppress or reopen the hearing *(see,* CPL 710.40). Also, the issue is not properly preserved for appellate review as the defendant's original motion to suppress his statements was not predicated on the ground that his right to silence was violated *(see, e.g., People v Gonzalez,* 55 NY2d 887, 888). In any event, Detective Bottari's interview, which concluded with his obtaining the defendant's statement, was conducted after a reasonable interval of about four hours had passed, by a police officer other than Carpenter, and commenced with the reading of the *Miranda* warnings. Under the totality of circumstances, Bottari's subsequent interview of the defendant was not a continuation of the initial interrogation, and was apparently conducted upon the defendant's reconsideration of his earlier decision to make no statement *(see, People v Gary,* 31 NY2d 68, 70).

We also find no merit to the defendant's contention that his statement was obtained on the basis of harassment and psy-.

chological coercion. The information about Donna Bell's statement was given to the defendant after he waived his *Miranda* rights. Moreover, he was brought to view the videotaping of Bell's statement after his expression of disbelief that she had made a statement. The record does not indicate any pattern of unrelenting police coercion designed to elicit a statement from the defendant *(cf., People v Pugh, 70 AD2d 664).*

The defendant also contends that the judgment should be reversed because of the prosecutrix's improper references to the hearsay incriminating statements of the codefendant Bell. Assuming, arguendo, that the references were improper, any errors were harmless in view of the overwhelming evidence of the defendant's guilt *(cf., People v Tufano, 69 AD2d 826, 827).*

Finally, we find no merit to the defendant's contention raised in his *pro se* supplemental brief challenging the sufficiency of the indictment's designation of the time of the crimes charged as occurring "on or about April 5, 1983". The People in this case did not move to amend the indictment, although the evidence which they presented at trial indicated that the crimes occurred in the early morning hours of April 6, 1983. We note that when the trial court denied the defendant's motion at the close of the People's case to dismiss the indictment because of this alleged defect, it offered the defendant a continuance to prepare his defense. Moreover, the indictment in this case satisfies the requirements of CPL 200.50 (6) *(see also, People v Morris, 61 NY2d 290).* The evidence in the record indicates no bad faith on the part of the prosecution regarding the failure to fix a more precise time of the crimes charged. According to the testimony of the People's expert who performed the autopsy on the victim, it was impossible for him to give an opinion as to a specific time of death, as the medical investigator who arrived at the scene sometime around 10:50 P.M. on April 6, 1983, failed to determine the victim's time of death which could have best been determined at that time. Under these circumstances, and considering the nature of the crime, we find that the details provided in the indictment sufficiently alerted the defendant to the nature of the charges against him and provided reasonable certainty as to the time of the crimes. Brown, J. P., Niehoff, Sullivan and Harwood, JJ., concur.