■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JAMES LEVINE, Appellant.—Appeal by the defendant from a judgment of the Supreme Court, Queens County (Giaccio, J.), rendered January 8, 1986, convicting him of murder in the second degree and robbery in the first degree, upon a jury verdict, and imposing sentence. The appeal brings up for review the denial, after a hearing (Agresta, J.), of that branch of the defendant's omnibus motion which was to suppress certain statements made by him to law enforcement officials.

Ordered that the judgment is affirmed.

The circumstances of the crimes of which the defendant stands convicted are detailed in our decision on the appeal of

the codefendant Luis Santiago, with whom the defendant was jointly tried (see, People v Santiago, 174 AD2d 764 [decided herewith]).

The defendant argues on appeal that his statements should have been suppressed as the fruit of an illegal arrest in his home and the statements were not sufficiently attenuated from the unlawful police conduct to purge any taint arising therefrom. However, we find the defendant's argument meritless. The arrest was proper and the statements were properly admitted into evidence at the trial. The evidence adduced at the suppression hearing adequately supports the hearing court's conclusion that the warrantless police entry into the defendant's apartment was effected with the consent of the defendant's wife and, therefore, the defendant was not arrested in violation of the principles enunciated in Payton v New York (445 US 573) or People v Harris (72 NY2d 614, revd 495 US 14, on remand 77 NY2d 434).

The evidence adduced at the suppression hearing reveals that by 11:00 P.M. on March 9, 1983, the police had information indicating that the defendant, identified by the informants as "Jimmy" or "Jimbo", may have been responsible for numerous armed robberies and at least one murder committed in several adjoining counties over the preceding two weeks. Shortly thereafter, the police set out to look for the defendant knowing him to be armed, dangerous and a genuine threat to the public. A former accomplice of the defendant conducted the police to where "Jimbo" lived. Upon their arrival, the police officers knocked on the door. None of the officers had his weapon drawn. While the defendant hid under a comforter behind his infant daughter's crib, the defendant's wife opened the door, claimed that her husband was not home, and invited the officers to verify the defendant's absence by entering the apartment and looking around. The police discovered the defendant in his hiding place, whereupon he was arrested. Although the hearing record suggests that the consent of the defendant's wife to the police entry into the apartment may have been a ruse to disarm the police into making only a cursory search of the cluttered apartment, it nevertheless constituted a consent, as the suppression court, with its advantage of having observed and heard the witnesses, properly found (see, People v Stroman, 83 AD2d 370, 372).

In any event, exigent circumstances existed based upon the information the police had gathered by the night of March 9, 1983, to justify the warrantless entry of the police into the defendant's apartment and his subsequent arrest. Exigent

circumstances were present because (1) the offense committed was extremely violent, (2) the police had reason to believe that the suspect was armed, (3) there was probable cause to believe the defendant had committed the offense, (4) the police had strong reason to believe the defendant was present in the premises, and (5) the police had cause to fear the defendant was about to commit another violent crime or to escape *(see, People v Cartier,* 149 AD2d 524, 525, *cert denied* 495 US 906). The police entered the premises in the early morning hours without the use of force.

The record also supports the suppression court's finding that the defendant's statements were voluntarily made after the defendant had knowingly and intelligently waived his *Miranda* rights *(see, Miranda v Arizona,* 384 US 436). Where, as here, "the suppression hearing [was] distilled to a credibility issue among witnesses which was resolved in the People's favor" *(People v Lacy,* 127 AD2d 933, 934), the court's resolution of such issues should not be disturbed unless clearly unsupported by the record *(see, People v Prochilo,* 41 NY2d 759, 761; *People v Alver,* 111 AD2d 339, 340).

Equally without merit is the defendant's contention that the trial court violated his right of confrontation and his right to a fair trial when it improperly denied his motion for a separate trial. The defendant's right of confrontation was not infringed by the admission of the confession of his codefendant Luis Santiago, since the codefendant took the stand at the trial. Where a codefendant testifies, even if only to denounce his confessions, he is available to be cross-examined by the defendant who has been implicated in the confessions, and thereby provides the defendant with the opportunity to exercise his Sixth Amendment right to confrontation *(see, People v Payne,* 35 NY2d 22, 26; *People v Anthony,* 24 NY2d 696, 702-703; *People v Hayes,* 127 AD2d 608, 609).

We have examined the defendant's remaining contention and find it to be without merit. Thompson, J. P., Kunzeman, Miller and O'Brien, JJ., concur.