■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v LUIS SANTIAGO, Appellant.—Appeal by the defendant from a judgment of the Supreme Court, Queens County (Giaccio, J.), rendered December 12, 1985, convicting him of murder in the second degree and robbery in the first degree, upon a jury verdict, and imposing sentence. The appeal brings up for review the denial, after a hearing (Agresta, J.), of those branches of the defendant's omnibus motion which were to suppress certain statements made by him to law enforcement officials and physical evidence seized by the police.

Ordered that the judgment is affirmed.

The defendant Luis Santiago was jointly tried before a jury with his codefendant James Levine and convicted of felony murder and robbery in the first degree arising from the fatal shooting of Ernesto Manegal committed in the course of the robbery. In the early morning hours of March 8, 1983, the defendant and Levine, accompanied by Edward Gallardo, entered a restaurant in Queens County, and proceeded to rob at gunpoint Rafael Torres, an employee of the restaurant, and Ernesto Manegal, a patron. Levine fired the fatal shot as Manegal, who was laying on the floor as directed by the perpetrators, apparently resisted Levine's effort to pull a gold chain off his neck. The codefendant Gallardo was separately tried and convicted of the same crimes as Levine and Santiago.

Both Levine and Santiago made statements to the police which inculpated them in the crime and some version of those statements was admitted at their joint trial. On appeal, the defendant contends that the introduction at trial of the statements made to police by the nontestifying codefendant Levine deprived him of a fair trial. Levine made three statements to law enforcement officials within 12 hours of his arrest on March 10, 1983. The first statement made to New York City Police Detective Michael Geary by Levine in his apartment at the time of his arrest was narrated by Detective Geary at the trial without objection by the defendant Santiago's counsel. The defendant's challenge thereto has, therefore, not been preserved for appellate review as a matter of law (see, CPL 470.05 [2]) and we decline to reach it in the exercise of our interest of justice jurisdiction. In Levine's final statement, made on videotape to Queens County Assistant District Attorney Steven Lipton, he simply invoked his right to remain silent, making no mention of the defendant in the process, and, therefore, the admission of that statement at trial in no way prejudiced the defendant. Thus, the only statement which we need address on this appeal is Levine's second statement, made on videotape to Bronx County Assistant District Attorney Martin Goldberg. Portions of Levine's statement to Assistant District Attorney Goldberg were admitted at trial.

The admission into evidence of the statement of the nontestifying codefendant was error under the rule enunciated by the United States Supreme Court in *Cruz v New York* (481 US 186, *on remand* 70 NY2d 733). However, this violation of the Confrontation Clause may be deemed harmless beyond a reasonable doubt if there is no reasonable possibility that the jury would have acquitted the defendant absent the error *(see,*

*People v West,* 72 NY2d 941; *People v Hamlin,* 71 NY2d 750).
In assessing whether the violation of the defendant's confrontation right was harmless, the defendant's own confession may be considered on appeal *(see, People v Pena,* 159 AD2d 651, 652; *People v Biggerstaff,* 159 AD2d 714).

The defendant made three full statements on March 10, 1983, in which he detailed his role in the robbery which resulted in Manegal's death. The first statement was made on videotape to Assistant District Attorney Goldberg at 7:30 A.M. An oral confession was made to New York City Police Detective John Moeller at about 11:00 A.M., which the officer recounted at the trial, and the last statement was made on videotape to Assistant District Attorney Lipton at 1:53 P.M. However, the defendant repudiated all three confessions during his trial testimony, as having been coerced by the police conduct in depriving him of drugs while he was in the throes of narcotics withdrawal exacerbated by other police abuses. Where a defendant has repudiated his confessions, the detailed statement of a codefendant may particularly prejudice a jury burdened with the task of deciding the voluntariness of the defendant's repudiated statements *(People v Hamlin, supra,* at 758). Nevertheless, we find no reasonable possibility at bar that the jury's assessment of the defendant's guilt was affected by Levine's improperly admitted statement. Notably, at some time during the morning of March 10, 1983, the defendant was taken to a local hospital for treatment for his drug withdrawal symptoms. Consequently, at the very least, the defendant's videotaped statement to Assistant District Attorney Lipton at 1:53 P.M. could not have been uttered under pressure of his protracted narcotics withdrawal. The defendant's other challenges to the voluntariness of his statements turn on issues of credibility. Contrary to the defendant's contention, the record supports the hearing court's conclusion that the defendant's girlfriend consented to the police entry into her apartment and permitted them to remain there until the defendant's arrival, at which time he was arrested. Thus, the defendant's subsequent statements were not the product of a *Payton* violation *(Payton v New York,* 445 US 573). Nor did the suppression court err in concluding that the defendant had knowingly and intelligently waived his *Miranda* rights *(see, Miranda v Arizona,* 384 US 436). As the record supports the hearing court's determinations which resolved the credibility issues in favor of the People, there is no basis to disturb them on appeal *(see, People v Gagne,* 129 AD2d 808, 810; *People v Alver,* 111 AD2d 339, 340).

We have examined the defendant's remaining contentions and find them to be without merit. Thompson, J. P., Kunzeman, Miller and O'Brien, JJ., concur.