(March 23, 1995)

■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JEFFREY SETLESS, Appellant. [625 NYS2d 304] —Mercure, J. Appeal from a judgment of the County Court of Rensselaer County (Dwyer, Jr., J.), rendered March 4, 1992, upon a verdict convicting defendant of the crime of murder in the second degree.

On April 27, 1991, the body of a woman was found in her apartment in the City of Troy, Rensselaer County. The cause of death was strangulation. Police found fingerprints of defendant and his son, Marc Setless, in the victim's apartment, as well as various records and documents bearing both their names. Marc was arrested for conspiracy to commit murder and, acting on information that Marc provided, police officers traveled to defendant's place of employment, advised him of the victim's death, read him his Miranda rights and asked him to sign a waiver-of-rights form. When he refused, defendant was informed of Marc's arrest and presented with a copy of the accusatory instrument. Defendant stated that Marc was not involved and made statements inculpating himself in the murder. Defendant then signed the waiver-of-rights form and a written statement. Defendant was indicted on two counts of murder in the second degree (Penal Law § 125.25 [1], [2]) and, following an unsuccessful motion to suppress his statements to police and a trial, defendant was convicted of intentional second degree murder. Defendant received an indeterminate prison sentence of 25 years to life. This appeal ensued.

Initially, we reject defendant's contention that his oral and written statements were obtained in violation of his constitutional rights because he refused to sign a written waiver of his rights. A refusal to sign a written waiver is not an implicit

invocation of a defendant's *Miranda* rights where, as here, it is clear that he was advised of his *Miranda* rights and affirmatively waived them by agreeing to talk with police *(see, People v Danaher,* 115 AD2d 905, 906; *see also, North Carolina v Butler,* 441 US 369, 373; *People v Da Costa,* 201 AD2d 402, *lv denied* 83 NY2d 871; *People v Ridgeway,* 101 AD2d 555, 562, *affd* 64 NY2d 952). Moreover, although capitalizing on defendant's reluctance to involve a family member in the investigation, the display of the accusatory instrument charging defendant's son did not create a substantial risk that defendant would falsely incriminate himself, inasmuch as police had probable cause to arrest Marc *(see, e.g., People v Young,* 197 AD2d 874, 875, *lv denied* 82 NY2d 854; *People v Oxx,* 155 AD2d 851, 852, *lv denied* 76 NY2d 740). In our view, the People established beyond a reasonable doubt that the statements were admissible.

We are persuaded, however, that County Court committed reversible error in its receipt of certain of the trial evidence concerning the victim's sexual relationship with Marc, as well as her sadomasochistic relationship with defendant. During the presentation of the People's case, County Court received testimony from Marc that he met the victim when defendant "gave" her to him as a 16th birthday present so that he could lose his virginity, proof of the continuing relationship between Marc and the victim, evidence of defendant's sadomasochistic relationship with the victim and detailed evidence of sexual implements found in the victim's apartment. It is well settled that, although evidence of a defendant's prior criminal or immoral conduct may be received "if it helps to establish some element of the crime under consideration" *(People v Alvino,* 71 NY2d 233, 241), "is relevant because of some recognized exception to the general rule" *(supra)* or is so "inextricably interwoven" with other facts in the case that it is "explanatory of the acts done or words used in the otherwise admissible part of the evidence" *(People v Ventimiglia,* 52 NY2d 350, 361; *see, People v Ely,* 68 NY2d 520, 529), it is inadmissible to establish a defendant's general bad character or criminal propensity *(see, People v Allweiss,* 48 NY2d 40, 46).

Although the fact of defendant's sadomasochistic relationship with the victim did demonstrate defendant's motive to kill her when she threatened to expose their conduct to defendant's mother and girlfriend, we perceive no analogous relevance to the explicit testimony concerning Marc's relationship with the victim and exhibition to the jury of whips and other implements of torture. We agree with defendant that

the potential prejudice of this evidence of an uncharged crime *(see,* Penal Law §§ 20.00, 130.25 [2]) and arguably immoral conduct far outweighed its probative value. To compound the error, County Court failed to conduct a hearing satisfying the requirements of *People v Ventimiglia (supra)* and CPL 60.43 prior to admission of the evidence at trial and to issue appropriate limiting instructions to the jury thereafter *(see, People v Forbes,* 203 AD2d 609, 611; *People v Intelisano,* 188 AD2d 881, 883).

Defendant's remaining contentions have either been considered and found to lack merit or have been rendered academic by our determination to reverse the judgment of conviction and remit the matter for a new trial.

Mikoll, J. P., Crew III, Yesawich Jr. and Peters, JJ., concur. Ordered that the judgment is reversed, on the law, and matter remitted to the County Court of Rensselaer County for a new trial.