■ THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v DAVID READ, Respondent. [904 NYS2d 147]—

Appeal by the People from an order of the County Court, Rockland County (Bartlett, J.), entered November 6, 2009, which, after a hearing, granted that branch of the defendant's omnibus motion which was to suppress his statements to law enforcement officials.

Ordered that the order is reversed, on the law, and that branch of the defendant's omnibus motion which was to suppress his statements to law enforcement officials is denied.

The police responded to a radio dispatch call concerning the complainant's allegation that her former husband had violated an order of protection by making harassing telephone calls to her. The police arrested the defendant based upon the complainant's statements. Upon his arrest, the defendant made several threatening remarks to the complainant in the presence of the police. These statements were suppressed, however, because the County Court found that the police lacked probable cause to arrest the defendant, and the statements were made as a direct result of his illegal arrest.

The County Court erred in granting that branch of the de-

fendant's omnibus motion which was to suppress his statements on the basis that the police lacked probable cause to arrest him. A statement of a complainant, an identified citizen, is assumed to have veracity and is sufficient to establish probable cause for arrest (*see People v Sanders*, 239 AD2d 528 [1997]; *People v Boykin*, 187 AD2d 661 [1992]; *People v Cotton*, 143 AD2d 680 [1988]). Unlike a paid or anonymous informant, an eyewitness victim of a crime can provide probable cause for the arrest of her assailant despite the fact that her reliability has not been previously established or her information corroborated (*see People v Gonzalez*, 138 AD2d 622 [1988]). Probable cause is established absent materially impeaching circumstances, where, as here, the victim of an offense communicates to the arresting officer information affording a credible ground for believing the offense was committed and identifies the accused as the perpetrator (*id.*). Here, there was no need for the police officers to have verified the complainant's accusations prior to arresting the defendant.

The police are prohibited from making a warrantless and nonconsensual entry into a suspect's home in order to make a routine felony arrest (*see Payton v New York*, 445 US 573, 576 [1980]). Here, however, the complainant, who claimed to also live in the apartment, gave consent for the police to enter (*see generally People v Levine*, 174 AD2d 757 [1991]). When a person with ostensible authority consents either explicitly or tacitly to the police presence in the home, then the rule espoused in *Payton* is not violated (*see People v Russo*, 243 AD2d 658 [1997]). Therefore, the police officers lawfully entered the apartment and ultimately executed a lawful arrest based on the information given to them by the complainant (*see generally People v Pegues*, 208 AD2d 773 [1994]).

The defendant's spontaneous statements, made after his arrest but before *Miranda* warnings (*see Miranda v Arizona*, 384 US 436 [1966]) were administered, were not triggered by any police conduct which could reasonably have been expected to evoke a declaration from him (*see People v Baliukonis*, 35 AD3d 626 [2006]). Therefore, the defendant's post-arrest statements should not have been suppressed.

In light of the foregoing, the People's remaining contentions have been rendered academic. Mastro, J.P., Covello, Belen and Hall, JJ., concur.