Appeal by the defendant from a judgment of the Supreme Court, Kings County (D’Emic, J.), rendered July 20, 2009, convicting him of attempted criminal possession of a weapon in the third degree, upon his plea of guilty, and imposing sentence. The appeal brings up for review the denial, after a hearing (Joel *867 Goldberg, J.), of those branches of the defendant’s omnibus motion which were to suppress physical evidence and his statements to law enforcement officials.
Ordered that the judgment is affirmed.
On the evening of April 1, 2008, the defendant’s former girlfriend met with a detective to file a robbery complaint against the defendant. She also told him that the defendant sold marijuana, which he packaged at his parents’ apartment, and possessed a firearm. Thereafter, the detective commenced an investigation. On the morning of April 3, 2008, the former girlfriend called the precinct to report that the defendant was standing at that moment on the southeast corner of Loring Avenue and Elderts Lane. The detective was out of the office at that time, so the detective’s partner (hereinafter the partner) took her call. Within minutes, the partner arrived at the corner she had named and found the defendant, who met the former girlfriend’s general physical description and identified himself as Robert Jackson, the name the former girlfriend had provided to the police.
At the police station, about an hour later, the defendant waived his rights and made a written statement admitting to the robbery. About a half an hour after that, the defendant made additional statements admitting that he had marijuana in a shoe box by the couch as well as a gun at his parents’ apartment. The police went to the apartment and obtained the written consent of the defendant’s father to search the defendant’s belongings. In a shoe box located where the defendant said it would be, the police found marijuana, a scale, and ziploc bags. In a gym bag on the balcony, they found a revolver. About an hour or an hour and a half later, the police returned to the precinct and confronted the defendant with the gun. The defendant made an additional oral statement admitting to possession of the marijuana and a written statement admitting to possession of the gun.
Initially, contrary to the People’s contention, the defendant did not validly waive his right to appeal (see People v Bradshaw, 18 NY3d 257, 265 [2011]; People v Lopez, 6 NY3d 248, 256 [2006]; People v Foster, 87 AD3d 299, 303 [2011]). However, the hearing court properly denied those branches of the defendant’s omnibus motion which were to suppress physical evidence and his statements to law enforcement officials as fruits of an unlawful arrest. Probable cause is established absent materially impeaching circumstances, where, as here, “the victim of an offense communicates to the arresting officer information affording a credible ground for believing the offense was committed *868 and identifies the accused as the perpetrator” (People v Read, 74 AD3d 1245, 1246 [2010]; see People v Gonzalez, 138 AD2d 622, 623 [1988]). The defendant’s contention that the People failed to establish the reliability and basis of the complainant’s statements to the arresting officer is unpreserved for appellate review, since the defendant failed to raise this specific argument in support of suppression before the hearing court (see CPL 470.05 [2]; People v Nadal, 57 AD3d 574, 574-575 [2008]). In any event, it is without merit. Contrary to the defendant’s contention, the partner testified at the hearing that he was familiar with the underlying allegations of the complainant’s robbery claim and the nature of her relationship with the defendant, despite her having relayed these details to the detective. Even assuming that the partner had limited firsthand knowledge of these underlying details, under the fellow officer rule, his awareness that the detective had determined that there was probable cause to believe that the defendant had committed the robbery was sufficient (see People v Garcia, 284 AD2d 479, 481 [2001]). As to the complainant’s report to the partner of where the perpetrator could be found, since she was an identified victim, the reliability and basis of her information is presumed (see People v Adams, 224 AD2d 703, 704 [1996]; People v Boykin, 187 AD2d 661, 662 [1992]). Since a man meeting the general physical description provided by the complainant was found on the specific street corner she named within minutes of her call and confirmed that he was Robert Jackson, under all of the circumstances, there was probable cause to arrest the defendant (see People v Rogers, 71 AD3d 457, 457-458 [2010]; People v Velez, 59 AD3d 572, 574-575 [2009]; People v Munoz, 286 AD2d 448 [2001]; People v Diaz, 210 AD2d 248 [1994]). That the partner handcuffed the defendant before asking his name does not invalidate the arrest, since the partner confirmed the defendant’s identity immediately after he was handcuffed (see People v Williams, 239 AD2d 368 [1997]). In any event, the defendant’s later admissions relating to the marijuana and firearm were the product of his being confronted with the complainant’s independently obtained statement that he possessed such contraband as well as his clear willingness to speak with the police, not the result of the initial detention (see People v Conyers, 68 NY2d 982, 983 [1986]; People v Rogers, 52 NY2d 527, 534 [1981]).
The hearing court also properly rejected the defendant’s contention that his inculpatory statements made to law enforcement officials were involuntary. “[I]t is not an improper tactic for police to capitalize on a defendant’s sense of shame or reluctance to involve his family in a pending investigation *869 absent circumstances which create a substantial risk that a defendant might falsely incriminate himself’ (People v Mateo, 2 NY3d 383, 415-416 [2004], cert denied 542 US 946 [2004]). Contrary to the defendant’s contention, the partner’s statement concerning the possible consequences to the defendant’s family were narcotics recovered from their apartment pursuant to a search warrant was not a coercive threat, since it was not untrue (see People v Sanabria, 52 AD3d 743, 745 [2008]; People v Setless, 213 AD2d 900 [1995]).
The defendant’s contention that the police should have administered Miranda warnings (see Miranda v Arizona, 384 US 436 [1966]) a second time is similarly without merit, since he had validly waived these rights less than an hour before, and remained continuously in custody in the same interview room {see People v Martin, 68 AD3d 1015, 1016 [2009]; People v Pegues, 59 AD3d 570, 571 [2009]; People v Glinsman, 107 AD2d 710 [1985]).
The hearing court also properly denied suppression of the physical evidence found in his parents’ apartment. “ ‘[T]he police may lawfully conduct a warrantless search when they have obtained the voluntary consent of a party who possesses the requisite degree of authority and control over the premises or personal property in question’ ” {People v Watson, 101 AD3d 913, 914 [2012], quoting People v Cosme, 48 NY2d 286, 290 [1979]; see People v Bran, 82 AD3d 1000 [2011]). The record supports the court’s determination that the defendant’s father voluntarily gave the police permission to enter the apartment and voluntarily signed a consent form authorizing a search of the defendant’s belongings therein {see People v Kelly, 58 AD3d 868, 869 [2009]; People v Forino, 39 AD3d 664, 665 [2007]; People v Fregosi, 258 AD2d 259, 260 [1999]). The People further established that the father had authority to consent to the search, since there was no indication that the defendant had exclusive access to the plainly visible and easily opened containers in the common areas of the apartment {see People v Kelly, 58 AD3d at 869; People v Daniels, 22 AD3d 678, 679 [2005]; People v Williams, 278 AD2d 150, 151 [2000]). Accordingly, it was reasonable for the police to rely on the father’s apparent authority to consent to the search {see People v Kelly, 58 AD3d at 869; People v Williams, 278 AD2d at 151).
Eng, PJ., Dickerson, Hall and Lott, JJ., concur.