■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v TERRANCE W. MILES, Appellant. [617 NYS2d 916] —Cardona, P. J. Appeal from a judgment of the County Court of Greene County (Battisti, Jr., J.), rendered June 19, 1993, convicting defendant upon his plea of guilty of the crime of criminal possession of a controlled substance in the second degree.

On September 30, 1991, at approximately 1:00 P.M., State Trooper Kenneth Wilson was preparing to reenter northbound traffic on the Thruway after completing an unrelated traffic stop when he observed the driver of a northbound automobile not wearing a seatbelt. Wilson stopped the automobile. Following a request for license and registration, the driver, codefendant Lorrita P. Maxwell, was unable to produce a valid driver's license although she stated that she had one. She did produce a registration indicating that the car was registered to defendant. Wilson asked Maxwell to exit her vehicle and she complied. Wilson asked Maxwell if she had any papers or effects that would identify her in her pockets and, although she emptied her pockets, she could not produce any identification. Wilson asked her if she had any identification in her purse. Maxwell retrieved her purse from the car and Wilson asked her if he could look inside, and she consented. Wilson took out a wallet, opened it and handed it to Maxwell, and she produced a photographic identification card with her name on

it. Wilson then asked Maxwell to return to the car and she complied. Defendant, who was seated in the front passenger seat, was then asked by Wilson if he had a valid driver's license. Defendant produced a New York driver's license which had expired in March 1991. Wilson returned to his patrol car, radioed his dispatcher and was told that Maxwell was not licensed in New York, that the car was registered to defendant whose license had indeed expired in March 1991, and that there were no warrants on either individual.

Wilson summoned Maxwell back to his patrol car. During the five or six seconds it took Maxwell to get out of the car, Wilson observed some quick movements of her head and the top of her shoulders. When Maxwell got out of the car she "hurriedly straightened her clothes". She was wearing dark leather pants and a waist-length white blouse pulled down under a belt which hung over the top of her pants. As she approached, Wilson asked her what she was doing. He reached out, raised her blouse and looked at the top of her pants. He saw nothing but observed that the top of her pants were unbuttoned and that the zipper was down an inch or two. Wilson told Maxwell to come around the passenger side and get into the vehicle. She complied and he then explained to her that he was going to issue tickets for driving without a license and driving without a seatbelt. He also observed that she was very nervous. Wilson asked her why she was nervous and Maxwell told him it was the traffic stop. He asked her why her pants were open and she indicated she had been eating chicken and always unbuttons her pants when eating. After Wilson issued the tickets, he asked Maxwell if there was anything in the car, if she knew about any contraband. She responded no. He then asked her if he could search the car and she did not respond.

Through the open passenger window, Wilson told defendant that Maxwell did not have a license and his license had expired. He explained to defendant that no one was able to drive the car and its contents had to be inventoried before it was towed. Wilson asked defendant if he had any weapons or other contraband in the car and defendant said no. He asked defendant if he could search the car and defendant assented. He asked defendant to step out of the car and the officer backed up so that defendant could open the door. As defendant got out of the vehicle he stepped with one foot over the guardrail (at a point where the ground sloped down into a ditch). Wilson, who stated that he was concerned that defendant might fall down the ditch, told defendant to stop and he

complied. Wilson put out his hand and took hold of defendant's arm to assist him over the guardrail. At that point, Wilson noticed a large bulge in the front waistband area of defendant's pants under his sweater. Wilson could not see what caused the bulge. He reached out with his fingers and pressed and squeezed the object once. The object felt very hard. Wilson raised the front of the sweater and saw the corner of a zip lock bag sticking two inches up from the front of defendant's pants. Wilson removed the bag from defendant's pants and observed a white powdery substance which he believed to be cocaine. He drew his gun and immediately placed both defendants under arrest.

Defendant was indicted for criminal possession of a controlled substance in the first degree. Defendant pleaded guilty to criminal possession of a controlled substance in the second degree after denial of his motion to suppress the physical evidence. He was sentenced to an indeterminate prison term of four years to life. Defendant appeals, contending that the denial of his suppression motion was error.

Initially, we note that Wilson was authorized to direct both driver and passenger to exit the vehicle during the traffic stop *(see, Michigan v Long,* 463 US 1032, 1047-1048; *Pennsylvania v Mimms,* 434 US 106; *People v Robinson,* 74 NY2d 773, 775, *cert denied* 493 US 966). Because a waistband bulge "is telltale of a weapon" *(People v De Bour,* 40 NY2d 210, 221), it was reasonable for Wilson to ensure his safety by engaging in the minimal intrusion of touching the bulge *(see, People v Mathis,* 167 AD2d 221, 222, *lv denied* 77 NY2d 963). However, once Wilson concluded that the bulge was not a weapon,* the further intrusions of lifting defendant's sweater and seizing the plastic bag were not authorized "absent application of some other exception to the warrant requirement" *(see, People*

---

* The following testimony was elicited from Wilson during his cross-examination at the suppression hearing:

"Q. Would it be fair to say when you patted him you patted him because of a concern for your safety?

"A. Yes, to ensure it's not a weapon.

"Q. That was your focus at that point in time, to ensure it was not a weapon?

"A. Yes * * *

"Q. And from the squeeze that you made of the object you could tell, could you not, it was not a gun, is that right?

"A. Yes. It did not feel like a gun.

"Q. O.K. You could tell it was not a knife, couldn't you?

"A. Yes, I didn't believe it was a knife."

*v Diaz*, 81 NY2d 106, 109). Based on this record, there has been no showing of exigent circumstances. Wilson lacked probable cause to arrest defendant prior to the search *(see, supra)*. Moreover, we reject the notion that the innocuous behaviors exhibited by Maxwell and defendant preceding the search of his person, constituted probable cause to search *(see, People v De Bour, supra,* at 216). Finally, there is no "plain touch" exception to the warrant requirement for a search of a concealed object not in plain view *(see, People v Diaz, supra,* at 110).

We have considered the People's remaining arguments and find them to be without merit. Accordingly, the judgment of conviction must be reversed and defendant's motion to suppress the physical evidence granted.

Mikoll, Mercure, White and Yesawich Jr., JJ., concur. Ordered that the judgment is reversed, on the law, defendant's motion to suppress physical evidence granted and matter remitted to the County Court of Greene County for further proceedings not inconsistent with this Court's decision.