■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v DWAYNE JACKSON, Also Known as TYRONE McMILLIAN, Appellant. [653 NYS2d 419] —Cardona, P. J. Appeal from a judgment of the County Court of Ulster County (Bruhn, J.), rendered October 26, 1994, upon a verdict convicting defendant of the crimes of robbery in the first degree (two counts), criminal use of a firearm in the first degree and criminal possession of a weapon in the second degree.

In October 1993, defendant was indicted on two counts of robbery in the first degree, one count of criminal use of a firearm in the first degree and one count of criminal possession of a weapon in the second degree. The charges stem from an August 25, 1993 gunpoint robbery of a Cumberland Farms store located in the City of Kingston, Ulster County. Following a jury trial, defendant was convicted on all counts and sentenced, as a second felony offender, to concurrent prison terms of $7\frac{1}{2}$ to 15 years. Defendant appeals.

Defendant argues that the police lacked probable cause and exigent circumstances to justify their warrantless entry into the residence where he was staying to effect his arrest. The relevant facts leading to defendant's arrest are drawn from the suppression hearing.

In the early morning hours of August 23, 1993, two individuals, described as black men dressed in dark clothing, robbed the Broadway Grocery store in Kingston. On August 25, 1993, two individuals matching the same description robbed the Cumberland Farms store in Kingston. In each incident, one man pointed a gun at the store clerk while the other took money from the cash register. During an interview conducted after the first robbery but prior to the second robbery, Jamal Clinton admitted to Kingston Police Detective Jeffrey Whitaker that he had acted as a lookout in the Broadway Grocery robbery. Inexplicably, the police released Jamal. Following the second robbery, Kingston Police Officer Gary Brooks was requested to locate Jamal as a possible suspect in the Cumberland Farms robbery. When Brooks arrived at Jamal's residence he encountered Jamal's twin brother, Jameel Clinton. Jameel informed Brooks that Jamal could be found at 60 Van Deusen Street with defendant and Mario Perez, that defendant

and Perez were involved in the robbery and that the gun involved in the robbery could be found at that address. Based on that information, the police proceeded to 60 Van Deusen Street. While Brooks questioned a woman occupant at that address concerning the whereabouts of Perez, Whitaker saw a maroon gym bag three feet inside. He tapped the bag with his foot and heard a heavy metallic sound. He bent down, grabbed the bag and felt a pistol grip. At that point, the woman objected to the presence of the officers in her house. Whitaker then announced that he found a gun. He immediately seized Perez who was standing three feet from him and other officers entered the house and seized defendant, who was upstairs. Defendant and Perez were arrested for criminal possession of a weapon. A later search of the house pursuant to a search warrant revealed evidence of the robbery.

Defendant initially contends that the hearsay information related to the police by Jameel was insufficient to establish probable cause for his warrantless arrest. It is axiomatic that hearsay statements will be deemed sufficient to establish probable cause for a warrantless search or arrest only if both prongs of the *Aguilar-Spinelli* test (*see, Spinelli v United States*, 393 US 410; *Aguilar v Texas*, 378 US 108) are satisfied (*see, People v Griminger*, 71 NY2d 635, 639; *People v Bigelow*, 66 NY2d 417, 423), i.e., that "there is a reasonable showing that the informant was reliable and had a basis of knowledge for the statement" (*People v Hetrick*, 80 NY2d 344, 348). Here, Jameel's status as a citizen informant satisfied the first prong of the test (*see, People v Parris*, 83 NY2d 342, 349-350; *People v Hetrick, supra*, at 349; *People v Slater*, 173 AD2d 1024, 1026, *lv denied* 78 NY2d 974).

Turning to the "basis of knowledge" requirement, we conclude that it was not satisfied. Notably, Jameel's information contained no statement that it was based on personal observation (*see, People v Bigelow, supra*, at 424; *see also, People v Parris, supra*, at 350). The People argue that Jamal was the source of Jameel's information. Even assuming that Jamal conveyed this information to Jameel, a proposition lacking support in the record, Jamal's basis of knowledge must still be demonstrated inasmuch as this information constitutes double hearsay (*see, People v Rosenholm*, 222 AD2d 909, 910, *lv denied* 88 NY2d 884). We note that the information itself is not sufficiently detailed to permit a reasonable inference that it was based upon Jamal's personal knowledge (*see, People v Bigelow, supra*, at 424; *see also, People v Parris, supra*, at 350). Significantly, if the information related to the police by Jameel had described the robbery in minute detail, it would have dispelled

any inference that he, or Jamal, was relying upon mere rumor or conjecture, and would have been an independent base upon which to predicate a finding that it was derived from personal observation (*see, People v Rodriquez*, 52 NY2d 483, 491).

The People also contend that the observation by the police of Perez and defendant at the 60 Van Deusen Street address permits this Court to infer that Jameel spoke from personal knowledge. We disagree. Where, as here, the informant does not specifically provide the source of his information, nor furnish detailed information about the criminal activity, subsequent police verification of innocent acts will not support the inference that the informant spoke with personal knowledge (*see, supra,* at 491). The mere presence of Perez and defendant at 60 Van Deusen Street was innocuous, and could not suffice to validate defendant's arrest (*see, supra*, at 492). Moreover, police verification of an informant's story must occur before an arrest is made and not, as here, contemporaneously with the arrest (*see, supra*, at 491).

Having failed to satisfy the "basis of knowledge" requirement, we conclude that the police lacked probable cause to sustain either the warrantless search of the gym bag or defendant's arrest. As to the former, we also note that "there is no 'plain touch' exception to the warrant requirement for a search of a concealed object not in plain view" (*People v Miles*, 208 AD2d 1089, 1092; *see, People v Diaz*, 81 NY2d 106, 110). Moreover, because the police relied upon the same information in obtaining their search warrant, we likewise find the warrant invalid and suppress the fruits of that search (*see, People v Bigelow*, 66 NY2d 417, *supra*).

Inasmuch as the police lacked probable cause to search or arrest, we need not consider the parties' remaining arguments, including the People's argument that the actions of the police were justified by "exigent circumstances" (*see generally, People v Burr*, 70 NY2d 354, 360, *cert denied* 485 US 989; *People v Knapp*, 52 NY2d 689, 695-696; *People v Price*, 211 AD2d 943, 944, *lv denied* 86 NY2d 739).

Mercure and Crew III, JJ., concur.

Peters, J. (dissenting). We respectfully dissent from the majority's conclusion that the second prong of the *Aguilar-Spinelli* (*see, Spinelli v United States*, 393 US 410; *Aguilar v Texas*, 378 US 108) test was not met here (*see, People v Hetrick*, 80 NY2d 344, 348).

Mindful that the *"raison d'etre* of all * * * judicial tests * * * enunciated by the courts with respect to informants' tips is to ensure that no arrest or search will be made without

probable cause * * * [w]e must not become so involved in the intricacies of judicial rule-making that we lose sight of this ultimate aim" (*People v Rodriguez*, 52 NY2d 483, 493).

It is well established that even double hearsay may be utilized to show probable cause so long as the requirements of *Aguilar-Spinelli* are met (*see, People v Parris*, 83 NY2d 342, 347; *People v Greene*, 153 AD2d 439, *lv denied* 76 NY2d 735, *cert denied* 498 US 947). We believe that here, the precise nature of the hearsay information related to the police by Jameel Clinton, Jamal Clinton's twin brother with whom he resided, coupled with both Jamal's prior admission of his involvement in the Broadway Grocery armed robbery and other information gleaned from police interviews, permitted the officers to make the reasonable inference that such information had been provided to Jameel by his brother.

According to Detective Jeffrey Whitaker, who interviewed Jamal after the Broadway Grocery robbery, Jamal admitted that two days prior to the robbery "he met up with some people at the Coastal Mart on the corner of Broadway and Franklin Street in the city". One was named Ed or E, a black male about 5 feet 9 inches tall who was wearing a red baseball cap. Another individual named Jab, a bit taller, 5 feet 11 inches, was also present wearing a Boston or a White Sox baseball cap. He described the third person he met there as Hispanic. Jamal said that they told him that they were going to rob the Broadway Grocery and then he agreed to act as their lookout.

Two days after that interview, at approximately 3:00 A.M. on August 25, 1993, Whitaker arrived at the Cumberland Farms in the City of Kingston, Ulster County, where a second armed robbery, not far from the first, had taken place. There he learned that the robbers were both black males, relatively young, who were wearing sweatshirts, dark clothing and had, like the Broadway Grocery robbery, brandished a gun. At 7:30 A.M. that same day, Detective James Brodhead of the Kingston Police Department interviewed Dhasan McComb, who told him that on the day before the robbery he was advised by his friend Tyrone, who he had met through Jamal, that Karl Wheeler intended to rob the Cumberland Farms. McComb further disclosed that he had heard that Wheeler had also robbed the Broadway Grocery and that on the evening following that robbery, he saw Wheeler wearing new clothes. Officer Gary Brooks was then dispatched to find Jamal. When he arrived at Jamal's residence, he encountered Jameel. After advising Jameel that he believed that Jamal had been involved in a robbery, Jameel told Brooks that Jamal was not at home but could be found at

60 Van Deusen Street with two persons who had committed the armed robbery at Cumberland Farms—Mario Perez and defendant. Jameel additionally told Brooks that the gun that had been used in the Cumberland Farms robbery was at the Van Deusen Street residence.

Since the information regarding the involvement of defendant was consistent with information gleaned from the independent investigation conducted by the police earlier that day,* the arresting officers immediately went to 60 Van Deusen Street and knocked on the door. A young girl, approximately 12 years old, was told that they were looking for Mario Perez. She left to summon her mother while the police remained in the doorway. When her mother learned of the reason for their presence, she began yelling and screaming. Thereafter, the gun was discovered and the arrest occurred.

As we have previously noted, "[t]he 'basis of knowledge' requirement, focusing on the trustworthiness of the information, can be satisfied either by the informant's own description of the underlying circumstances personally observed or, failing this, by police investigation that corroborates defendant's actions or develops information consistent with detailed predictions by the informant" (*People v O'Donnell*, 146 AD2d 923, 924-925; *see, People v Greene*, 153 AD2d 439, *supra*). With these precepts at hand, we find that when armed with disclosure of the location of the perpetrators and the weapon, the exigencies of the situation made the conduct of the police officers imperative. " 'The Fourth Amendment does not require police officers to delay in the course of an investigation if to do so would gravely endanger their lives or the lives of others' " (*Dorman v United States*, 435 F2d 385, 392). Each consideration set forth in *Dorman v United States* (*supra*) was present: a crime of violence, a reasonable belief that the suspect is armed, probable cause including "reasonably trustworthy information" to believe that the suspect has committed the crime, a strong reason to conclude that the suspect is located in the premises being entered, a likelihood that the suspect will escape if not apprehended swiftly and the officers' peaceable entry (*supra*, at 392-393; *see, People v Levine*, 174 AD2d 757, *lv denied* 79 NY2d 829; *People v Gordon*, 110 AD2d 778).

For these reasons, the judgment of County Court should be affirmed in its entirety.

White, J., concurs. Ordered that the judgment is reversed, on the law and the facts, motion to suppress granted and indictment dismissed.

---

* This information was also consistent with Jamal's prior admissions against penal interest.