■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v CLYDE BURRY, Appellant. [859 NYS2d 499]—

Stein, J. Appeal from a judgment of the County Court of Ulster County (Bruhn, J.), rendered July 31, 2006, upon a verdict convicting defendant of the crimes of criminal possession of a controlled substance in the third degree and criminal use of drug paraphernalia in the second degree.

After a conviction in March 2002 for criminal sale of a controlled substance in the third degree, defendant was originally released on parole in August 2003 and placed under the supervision of Parole Officer Lawrence Johnson. As a condition of his parole, defendant signed an agreement which provided, in pertinent part, that defendant would permit his parole officer to visit him at his residence and would permit the search and inspection of defendant's person, residence and property. Pursuant to that document, defendant was placed under the jurisdiction of the Division of Parole until March 18, 2006. Defendant subsequently violated his parole, his parole release was revoked and he was incarcerated until he was again released on parole in February 2005; at that time, Johnson was again assigned as his parole officer.

In August 2005, Johnson received an anonymous telephone

call informing him that defendant was dealing drugs. The caller specifically stated that drugs could be found in the upper right-hand drawer of defendant's dresser. Acting on that tip, Johnson went to the local police department to request that officers accompany him to defendant's home to provide security while he conducted a parole search. Johnson and uniformed officers Michael Doria and Richard Jacobs went to defendant's home sometime between 11:30 P.M. and midnight.

When Johnson rang the door bell, a child answered and defendant was spotted on the narrow set of stairs leading to the second story of the house. Johnson instructed defendant to proceed to the top of the stairs and wait for him there. According to Johnson, he and the police officers ascended the staircase, Johnson instructed defendant to identify the room in which he slept and defendant complied. The four men entered the bedroom and one or both police officers stood in front of the door. Johnson then stated that he had been informed that defendant was in the narcotics business and asked defendant if he minded if he looked around. Defendant did not answer, but started shaking and hyperventilating and repeatedly looked in the direction of his dresser. Johnson then went to the dresser, opened the upper right-hand drawer and removed a package of packets wrapped in rubber bands which appeared to be illegal drugs. After handing the package to Jacobs, Johnson asked defendant, "What is this?" Johnson testified that defendant began sobbing and crying uncontrollably and replied, "[I]t's heroin, it's mine and you don't need to look any further." Defendant also commented that he "would be in jail when his baby was born." Defendant was placed in handcuffs and Jacobs advised him that he was being arrested for possession of a controlled substance. Following repeated questioning by Jacobs, defendant again admitted that the substance was heroin. Defendant was then taken to the police car and Johnson returned to the room. Upon further searching, Johnson discovered a scale and a wallet containing $700 and defendant's identification.

Defendant was indicted on one count of criminal possession of a controlled substance in the third degree and one count of criminal use of drug paraphernalia in the second degree. After a suppression hearing, County Court found that the written release that defendant had signed in August 2003 was still in effect when defendant was searched in August 2005. Thus, the court ruled that the search conducted by Johnson was in accordance with the conditions of defendant's release and the items were properly seized. The court further held that defendant's statements—that the packets contained heroin and were his—

were admissible as spontaneous statements. However, County Court also ruled that defendant was then taken into custody and, therefore, the statements he made in response to police officers' questioning while in transit from his home to the police station and prior to being read his *Miranda* rights were inadmissible.

After a jury trial, defendant was found guilty of both crimes charged. He was then sentenced as a second felony offender to a prison term of seven years, followed by a three-year period of postrelease supervision, on the possession count and, on the use of drug paraphernalia count, a term of 360 days which merged with the seven-year sentence. Defendant appeals.

We find no merit to defendant's contention that the warrantless search of his home was unconstitutional and the evidence seized as a result of that search should have been suppressed. It is true "that in consequence of his acquiring status as a parolee, [defendant] did not surrender his constitutional rights against unreasonable searches and seizures" (*People v Huntley*, 43 NY2d 175, 181 [1977]). Nor is "the standard authorization signed by defendant as parolee for searches of his person, residence or property . . . to be taken as an unrestricted consent to any and all searches whatsoever or as a blanket waiver of all constitutional rights to be secure from unreasonable searches and seizures" (*id.* at 182). Nonetheless, "what may be unreasonable with respect to an individual who is not on parole may be reasonable with respect to one who is" (*id.* at 181). "Where, . . . as here, the search and seizure is undertaken by the parolee's own parole officer, . . . [the question of] whether the action was unreasonable . . . must turn on whether the conduct of the parole officer was rationally and reasonably related to the performance of the parole officer's duty," including the duty "to detect and to prevent parole violations for the protection of the public from the commission of further crimes . . . [and] to prevent violations of parole" (*id.*).

Here, Johnson's decision to search defendant's home was the result of an anonymous tip that defendant was selling drugs and was clearly related to the performance of his duty as a parole officer. While an anonymous tip, standing alone, cannot justify a search (*see Florida v J.L.*, 529 US 266, 270 [2000]), it can provide "reasonable suspicion" when it supplies sufficient predictive information that gives a manner of testing the informant's knowledge or credibility (*see id.* at 270; *United States v Muhammad*, 463 F3d 115, 121 [2d Cir 2006]; *People v Moore*, 6 NY3d 496, 499 [2006]). The tip received by Johnson here was very specific with regard to the location of the drugs.

Thus, the tip provided predictive information of illegal activity. This, coupled with Johnson's knowledge of defendant's recidivist history, previous parole violation and illegal drug use, possession and sales, was sufficient to provide the requisite individualized reasonable suspicion to support the search of defendant's home and the seizure of the drugs and related items found there (*see Florida v J.L.*, 529 US at 270-271; *United States v Muhammad*, 463 F3d at 121; *People v Huntley*, 43 NY2d at 181-182). We, therefore, find that defendant's motion to suppress that evidence was properly denied.

However, we find that County Court erred in failing to suppress the statements made by defendant to Johnson (identifying and admitting ownership of the drugs) in the absence of *Miranda* warnings. We have held that "the particular detention or restriction of movement must rise to the level of a de facto arrest before an individual will be deemed 'in custody' for purposes of *Miranda*" (*People v Ripic*, 182 AD2d 226, 230 [1992], *appeal dismissed* 81 NY2d 776 [1993]). The test to determine whether a defendant was in custody at the time of his or her statement is "what a reasonable [person], innocent of any crime, would have thought had he [or she] been in the defendant's position" (*People v Yukl*, 25 NY2d 585, 589 [1969], *cert denied* 400 US 851 [1970]). These principles are equally applicable to statements made to a parole officer while the parolee is in custody (*see People v English*, 73 NY2d 20, 21 [1989]).

Here, when Johnson arrived at defendant's home with two uniformed police officers, defendant was initially instructed to wait at the top of a narrow staircase (which only permitted one person to either ascend or descend at a time). Once the four men were in defendant's bedroom, the only exit was blocked by one or both of the police officers. Under these circumstances, we find that defendant's freedom was significantly restricted. Furthermore, the time of the search, the atmosphere as a whole, and the nature of the questioning, particularly after the drugs were discovered, would have led a reasonable person to believe that he or she was not free to leave (*see People v Mitchell*, 289 AD2d 776, 778 [2001], *lv denied* 98 NY2d 653 [2002]; *People v Hardy*, 223 AD2d 839, 840-841 [1996]). Contrary to County Court's finding, the record also demonstrates that defendant's statements were the result of direct questioning by Johnson, not spontaneous utterances (*see People v Stoesser*, 53 NY2d 648, 650 [1981]). Thus, we find that defendant's statements were the result of custodial interrogation and should have been suppressed (*see Miranda v Arizona*, 384 US 436, 444 [1966]).

Given this conclusion, we need not address defendant's remaining argument.

Cardona, P.J., Peters, Carpinello and Kane, JJ., concur. Ordered that the judgment is reversed, on the law, and matter remitted to the County Court of Ulster County for further proceedings not inconsistent with this Court's decision.