[952 NYS2d 678]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JAMES
L. PORTER, Also Known as SPOOK, Appellant.

Third Department, October 25, 2012

## APPEARANCES OF COUNSEL

*Matthew C. Hug*, Troy, for appellant.

*Robert M. Carney, District Attorney*, Schenectady (*Gerald A. Dwyer* of counsel), for respondent.

## OPINION OF THE COURT

MERCURE, J.P.

In June 2009, a confidential informant (hereinafter CI) alleged to parole officer Charles Figel that defendant possessed a handgun at his residence. Figel and defendant's parole officer, Jeffrey Bovee, then searched the residence, as permitted by defendant's parole conditions. The search resulted in the discovery of a bullet under a couch cushion, but no weapon was found. Shortly thereafter, around 9:30 p.m. on the same evening, the CI told Figel that he had just seen defendant walking with a silver handgun in his front waist. The CI also described what defendant and the individual with him were wearing, and provided their location in the City of Schenectady, Schenectady County.

Figel, who was not in the City, requested that detective Christopher Maher observe defendant until Figel and Bovee arrived. Figel informed Maher that defendant was violating his 9:00 p.m. curfew, and that he and Bovee planned to search defendant for a handgun. After Maher observed defendant and

two other men get into a minivan, he sought further instruction from Figel, who requested that police make a traffic stop of the vehicle. Maher radioed for the assistance of a marked police vehicle. Police officer Christopher Semione then stopped the minivan, and asked the occupants for identification and if they were on parole. At that point, Figel arrived, ordered defendant out of the minivan, and asked "do you have anything on you?" Defendant admitted that he had a gun in his waistband and was then taken into custody for the parole violations.

Defendant was subsequently charged in an indictment with two counts of criminal possession of a weapon in the second degree and a single count of criminal possession of a weapon in the third degree. Following a hearing, County Court denied defendant's motion to suppress the handgun and statements made by defendant during and after the traffic stop. A jury trial ensued, at the close of which defendant was acquitted of one count of criminal possession of a weapon in the second degree and otherwise convicted as charged. He was sentenced to an aggregate term of 10 years in prison to be followed by five years of postrelease supervision.

On this appeal, defendant primarily challenges County Court's denial of his suppression motion, asserting that the parole officers and police lacked reasonable suspicion to justify the traffic stop. Specifically, defendant asserts that the People were required at the suppression hearing to meet the two-pronged *Aguilar-Spinelli* test—i.e., demonstrate the CI's basis of knowledge and reliability (*see People v Rodriguez*, 52 NY2d 483, 488-489 [1981])—in relying upon the information provided by the CI to establish reasonable suspicion to stop the vehicle.

Generally, the *Aguilar-Spinelli* test is used in evaluating whether an informant's tip was sufficient to provide the police with *probable cause* for either the issuance of a search warrant or a warrantless arrest (*see People v Parris*, 83 NY2d 342, 346 [1994]; *People v Johnson*, 66 NY2d 398, 402-403 [1985]; *People v Landy*, 59 NY2d 369, 375 [1983]). As defendant concedes, however, the police were not required to demonstrate probable cause for the initial vehicle stop here; rather, they were required only to meet the less demanding reasonable suspicion standard (*see People v De Bour*, 40 NY2d 210, 223 [1976]). Inasmuch as " 'the standard of reasonable suspicion to stop is lower than the standard of probable cause for an arrest, a less stringent standard should apply for screening tips in the stop context—i.e., an officer may stop on less or different information than probable

cause would require' '' (*People v Colucci*, 268 AD2d 531, 532 [2000], *lv denied* 94 NY2d 917 [2000], quoting *People v Moore*, 32 NY2d 67, 70 [1973], *cert denied* 414 US 1011 [1973]). Thus, when the proper standard is reasonable suspicion, a lesser showing with respect to the *Aguilar-Spinelli* test will suffice (*see People v Herold*, 282 AD2d 1, 4-5 [2001], *lv denied* 97 NY2d 682 [2001]; *People v Colucci*, 268 AD2d at 532; *People v Legette*, 244 AD2d 505, 506-507 [1997], *lv denied* 92 NY2d 950 [1998]).

Moreover, while parolees do not surrender their constitutional rights against unreasonable searches and seizures, '' 'what may be unreasonable with respect to an individual who is not on parole may be reasonable with respect to one who is' '' (*People v Burry*, 52 AD3d 856, 858 [2008], *lv dismissed* 10 NY3d 956 [2008], quoting *People v Huntley*, 43 NY2d 175, 181 [1977]; *see People v Hale*, 93 NY2d 454, 459 [1999]). In determining whether a street encounter initiated by police is reasonable, we ''must weigh the interference . . . entail[ed] against the precipitating and attending conditions'' (*People v De Bour*, 40 NY2d at 223), including parolees' diminished privacy expectations and the conditional nature of parolees' liberty (*see People v Hale*, 93 NY2d at 459). Particularly relevant here, a search by a parolee's own parole officer will be found to have been properly undertaken if '' 'the conduct of the parole officer was rationally and reasonably related to the performance of the parole officer's duty,' including the duty 'to detect and to prevent parole violations for the protection of the public from the commission of further crimes . . . [and] to prevent violations of parole' '' (*People v Burry*, 52 AD3d at 858, quoting *People v Huntley*, 43 NY2d at 181; *see People v Nelson*, 257 AD2d 765, 766 [1999], *lv denied* 93 NY2d 975 [1999]).

In stopping the vehicle here, police were justified under the ''fellow officer'' rule in acting upon the direction of Figel, who—as a parole officer—provided information that was presumptively reliable (*see People v Ramirez-Portoreal*, 88 NY2d 99, 113 [1996]). Figel and Bovee, defendant's parole officer, intended to search defendant based upon the CI's tip indicating both that defendant was in violation of his 9:00 p.m. curfew and that he was carrying a gun.* The CI's basis of knowledge and moderate indicia of the tip's reliability were adequately demon-

---

* Defendant's assertion that Figel was unaware of whether defendant had a 9:00 p.m. or 10:00 p.m. curfew is unsupported by the record. Further, while Bovee did not perform the search of defendant, he was en route to the scene when the stop occurred and was working with Figel in investigating defend-

strated, for the purpose of establishing reasonable suspicion, by Figel's testimony regarding the police corroboration of the details of the CI's tip and that the CI had given him accurate, credible information at least five times in the weeks prior to defendant's arrest (*see People v Burry*, 52 AD3d at 858-859; *People v Nelson*, 257 AD2d at 766; *see also People v Maye*, 43 AD3d 556, 557 [2007], *mod on other grounds* 12 NY3d 731 [2009]). In our view, the report that defendant had a gun and was in violation of his curfew required investigation, particularly in light of the discovery of ammunition at defendant's residence earlier in the day; given the existence of reasonable suspicion, the inquiry whether he had a gun and search for the weapon were both entirely proper and rationally related to the parole officers' duties (*see People v Jenkins*, 64 AD3d 993, 994-995 [2009]; *People v Nesbitt*, 56 AD3d 816, 818-819 [2008], *lv denied* 11 NY3d 928 [2009]).

Defendant's remaining arguments, including his assertion that County Court erred in denying his request to redact the presentence investigation report, have been considered and found to lack merit (*see People v Jones*, 77 AD3d 1178, 1179 [2010], *lv denied* 16 NY3d 832 [2011]).

Rose, Spain, Malone Jr. and Garry, JJ., concur.

Ordered that the judgment is affirmed.

---

ant's parole violations (*see People v Felder*, 272 AD2d 884 [2000], *lv denied* 95 NY2d 905 [2000]); in any event, exigent circumstances necessitated that Figel perform the search.