People v Spirito (2023 NY Slip Op 02353)

People v Spirito

2023 NY Slip Op 02353

Decided on May 4, 2023

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:May 4, 2023

112309
[*1]The People of the State of New York, Respondent,
v
Dominic F. Spirito, Appellant.

Calendar Date:February 22, 2023

Before:Egan Jr., J.P., Aarons, Reynolds Fitzgerald and Ceresia, JJ.; Lynch, J., vouched in.

John A. Cirando, Syracuse, for appellant.
Kirk O. Martin, District Attorney, Owego (Cheryl A. Mancini of counsel), for respondent.

Reynolds Fitzgerald, J.
Appeal from a judgment of the County Court of Tioga County (Gerald A. Keene, J.), rendered December 13, 2019, convicting defendant upon his plea of guilty of the crime of criminal possession of a weapon in the third degree (two counts).
Defendant's parole officer, several members of his parole unit and two sheriff's deputies conducted a search of defendant's residence after receiving a tip from defendant's mother — with whom he resided — that she saw a picture of defendant with a gun. During the search, the parole officers located two extended magazines and gun parts in defendant's bedroom. As a result, defendant was indicted on two counts of criminal possession of a weapon in the third degree. Following a suppression hearing, County Court determined that the search was lawful and partially denied defendant's motion to suppress this physical evidence.[FN1] Defendant thereafter pleaded guilty as charged and was sentenced to a prison term of four years followed by five years of postrelease supervision. Defendant appeals.
The general rules and conditions of release typically require a parolee to submit to a warrantless search by his or her parole officer (see People v Thomas, 211 AD3d 1326, 1331 [3d Dept 2022], lv granted 39 NY3d 1081 [2023]). The record evinces that defendant executed such a document. However, "a parolee does not surrender his or her constitutional rights against unreasonable searches and seizures, [and] what may be unreasonable with respect to an individual who is not on parole may be reasonable with respect to one who is. Accordingly, a search of a parolee undertaken by a parole officer is constitutional if the conduct of the parole officer was rationally and reasonably related to the performance of the parole officer's duty and was substantially related to the performance of duty in the particular circumstances" (People v Wade, 172 AD3d 1644, 1644 [3d Dept 2019] [internal quotation marks, brackets, ellipses and citations omitted], lv denied 33 NY3d 1109 [2019]; see People v Huntley, 43 NY2d 175, 182-183 [1977]; People v Thomas, 211 AD3d at 1331).
The search of defendant's residence, which was based on the mother's tip, was rationally and reasonably related to the performance of the parole officer's duties. The parole officer's testimony at the suppression hearing revealed that defendant had the highest mental health designation from the Department of Corrections and Community Supervision — OMH Level 1-S. He further testified that his supervisor informed him that defendant's mother had called and advised him that she had viewed a picture of defendant holding a gun and that she was worried that he had a gun. The tip from defendant's mother was presumed reliable (see People v Parris, 83 NY2d 342, 350 [1994]; People v Taylor, 61 AD3d 537, 538 [1st Dept 2009], lv denied 13 NY3d 750 [2009]), unlike that from an anonymous tipster (compare People v Burry, 52 AD3d 856, 858 [3d Dept 2008], lv dismissed 10 NY3d 956 [2008]). As defendant and [*2]his mother resided together, had daily interaction, and the mother had knowledge of defendant's current mental health status, the tip was reliable. Although there is no evidence in the record as to when the picture of defendant was taken, defendant resided with the mother. As such, she was cognizant of her son's appearance, his attire and was capable of determining its chronology. Since the information concerning defendant's possible violation of his parole conditions came from his mother, there existed a legitimate reason for the search undertaken and it was substantially related to the performance of the parole officer's duties (see People v Wade, 172 AD3d at 1645; People v Lownes, 40 AD3d 1269, 1270 [3d Dept 2007], lv denied 9 NY3d 878 [2007]; People v Nelson, 257 AD2d 765, 766 [3d Dept 1999], lv denied 93 NY2d 975 [1999]). The motion to suppress the physical evidence was properly denied.
Defendant next contends that his plea was not knowingly, intelligently and voluntarily entered into because County Court, among other things, did not ensure that he fully understood the consequences of pleading guilty. Defendant's challenge to the voluntariness of the plea is not preserved as the record does not reflect that he made an appropriate postallocution motion, despite having an opportunity to make one, and the narrow exception to the preservation requirement is not implicated (see People v Dye, 210 AD3d 1192, 1193 [3d Dept 2022], lv denied 39 NY3d 1072 [2023]; People v Hawkins, 207 AD3d 814, 815 [3d Dept 2022]; People v Daniels, 193 AD3d 1179, 1180 [3d Dept 2021]).
Egan Jr., J.P., Lynch and Ceresia, JJ., concur.
Aarons, J. (dissenting). In my view, County Court erred in denying defendant's motion to suppress to the extent that defendant sought suppression of the magazines discovered in his bedroom. Accordingly, I respectfully dissent.
"A defendant who challenges the legality of a search and seizure bears the burden of proving illegality, but the People are required in the first instance to establish the legality of the police conduct" (People v Hofelich, 31 AD3d 882, 884-885 [3d Dept 2006] [citation omitted], lv denied 7 NY3d 867 [2006]). The People point to defendant's status as a parolee and the fact that defendant executed the standard form authorizing the search of his residence. Indeed, the People, in their memorandum of law to County Court, justified the search of defendant's bedroom on the basis that it was rationally and reasonably related to the performance of the parole officer's duties of conducting inspections of defendant's residence and helping reintegrate defendant into society.
Although a relevant factor in assessing the validity of a search, the fact that a defendant is a parolee does not amount to a surrender of his or her constitutional rights against unreasonable searches (see People v McMillan, 29 NY3d 145, 148 [2017]; People v Banks, 148 AD3d 1359, 1361 [3d Dept 2017]). Furthermore, the form authorizing searches by [*3]itself should not be construed "as an unrestricted consent to any and all searches whatsoever or as a blanket waiver of all constitutional rights to be secure from unreasonable searches and seizures" (People v Huntley, 43 NY2d 175, 182 [1977]). There must be more than just some rational connection between the search and the parole officer's duties (see id. at 181). Rather, the search "must also have been substantially related to the performance of duty in the particular circumstances" (id.).
This is not a situation where the parole officer was conducting a routine inspection of defendant's residence or where a parole violation warrant was issued due to defendant's failure to report. Instead, the impetus behind the warrantless search of defendant's residence was a tip from defendant's mother. Defendant thus argues that, under the circumstances of this case, the search of his residence was not based upon reasonable suspicion. That said, "[a]n informant's tip may provide the basis for a warrantless search . . . if the informant (1) is reliable and (2) has some 'basis for the knowledge' justifying [the] conclusion that the subject of the tip was involved in illegal activity" (People v Dunn, 170 AD2d 773, 775 [3d Dept 1991], quoting People v Bigelow, 66 NY2d 417, 423 [1985]; see People v Mabeus, 63 AD3d 1447, 1450 [3d Dept 2009]; People v Vann, 245 AD2d 818, 819 [3d Dept 1997], lv denied 91 NY2d 945 [1998], lv dismissed 91 NY2d 978 [1998]). "The 'basis of knowledge' requirement, focusing on the trustworthiness of the information, can be satisfied either by the informant's own description of underlying circumstances personally observed or, failing this, by police investigation that corroborates defendant's actions or develops information consistent with detailed predictions by the informant" (People v O'Donnell, 146 AD2d 923, 924-925 [3d Dept 1989], quoting People v Bigelow, 66 NY2d at 423-424).
Defendant's parole officer testified at the suppression hearing that his supervisor had received a call from defendant's mother. According to the parole officer, the mother advised the supervisor that she "saw a picture of [defendant] with a gun and she was worried that he ha[d] a gun." The supervisor relayed this information to defendant's parole officer, who then went to defendant's residence and ultimately discovered the magazines. Notably, neither defendant's mother nor the supervisor testified at the suppression hearing.
Even if I agreed with the majority that defendant's mother was reliable, the record nonetheless fails to demonstrate a sufficient basis for the mother's knowledge that defendant had a gun. In this regard, the only basis of the mother's knowledge stemmed from a photograph depicting defendant with a gun. There was no evidence, however, indicating when or where this photograph was taken. Moreover, even though the mother lived with defendant, there was no proof reflecting that the mother personally observed defendant with a gun, that she [*4]ever saw a gun in defendant's bedroom or that she otherwise had any firsthand knowledge that defendant had a gun (compare People v Wade, 172 AD3d 1644, 1645 [3d Dept 2019], lv denied 33 NY3d 1109 [2019]; People v Tyrell, 248 AD2d 747, 748-749 [3d Dept 1998], lv denied 92 NY2d 907 [1998]).
The majority states that, because defendant and his mother lived together, they had daily interaction and the mother knew of defendant's mental health condition, the mother's "tip was reliable." The majority further states that the mother was cognizant of defendant's appearance and attire. However, there is no support in the record for these factual assertions. As mentioned, the mother did not testify at the suppression hearing. To that end, there was no testimony at the suppression hearing about how long defendant lived with his mother, the extent or nature of their daily interaction or if the mother was, in fact, aware of his mental condition. There likewise was no evidence as to the clothes that defendant wore or whether his appearance was the same as that in the photograph. All that the record discloses about the tip was that the mother saw a picture of defendant holding a gun and that she was worried. More to the point, this tip was sparse on any specific details (see People v Jackson, 235 AD2d 923, 924-925 [3d Dept 1997]; compare People v Burry, 52 AD3d 856, 858 [3d Dept 2008], lv denied 10 NY3d 956 [2008]).
Because there is insufficient proof demonstrating the basis of the mother's knowledge, County Court should have granted that part of defendant's motion seeking suppression of the discovered magazines (see People v Jackson, 235 AD2d at 925; People v Young, 202 AD2d 957, 957-958 [4th Dept 1994]). Given that I would reverse the judgment on this basis, defendant's remaining argument relative to his guilty plea is academic.
ORDERED that the judgment is affirmed.

Footnotes

Footnote 1: County Court partially granted defendant's motion by suppressing his statements, cell phone and photographs.